Stern *et al.* agt. Florence Sewing Machine Company.

STERN *et al.* agt. THE FLORENCE SEWING MACHINE COMPANY.

*Lease — Assignee of, when not liable for rent — how his liability may be terminated — Agreement to pay rent without consideration to support it — Counter-claim for violation of agreement to heat premises.*

An assignee of a lease is not liable for rent of the demised premises, except for the time he occupies them, and may at any time terminate his liability for rent by assigning the lease.

Plaintiff rented to J. J. M. & Co. certain premises, and they went into possession of same in February 1869, and occupied up to January 1, 1870, at which time defendant went into possession. The lease was dated October 15, 1870, and was for a term ending May 1, 1872, at the annual rent of $900, from said fifteenth October until May 1, 1871, and at the rate of $1,050 from last-mentioned date until the end of the term. The plaintiff, by said lease, agreed to heat and warm said premises in a comfortable manner. J. J. M. & Co., being indebted to defendants, and being insolvent and unable to pay, defendants purchased their stock of sewing machines and took an assignment of their property, among which was the lease in question. The defendants, through their agent, asked plaintiff if he would be willing to assign the lease to them, and he replied that he would, provided he got his pay promptly and they assumed all the responsibility of J. J. M. & Co., and paid him his rent promptly, which defendants, through their agent, agreed to do, and thereupon plaintiff executed the consent on the lease:

*Held,* that the agreement of the defendants to pay rent (if such an agreement was, in fact, made) was without consideration to support it, and that what passed between plaintiff and the agent of defendants could not be construed into a new and distinct agreement to rent the premises and to pay rent otherwise than as specified in the written lease.

*Held,* also, that plaintiff having agreed to heat the premises rented to the defendants, and having violated that agreement, the defendant was entitled to recover, by way of counter-claim, such damages as it showed itself entitled to.

*Fourth Department, General Term, December,* 1876.

APPEAL from judgment on the report of a refereee.

Stern *et al.* agt. Florence Sewing Machine Company.

The plaintiffs, in their amended complaint, allege that, on the 1st of February, 1871, they rented to the defendants a portion of store No. 34 in Globe Hotel block, in the city of Syracuse, from that date until the 1st of May, 1872, at the rate of $1,000 per year, payable monthly, in advance. Defendants went into possession, but have refused to pay said rent; and there was due and unpaid the rent accruing on said lease for the months of November, December, 1871, and January and February, 1872, amounting to the sum of $333.33, with interest on the monthly installments from the time they became payable.

The answer, as amended, sets up five defenses to the complaint, to wit: First. A general denial. Second. Payment. Third. That the lease under which the defendants held the premises had been assigned before suit, and before rent in question had accrued. Fourth. Premises untenable and possession surrendered. Fifth. A counter-claim.

The cause was referred to a referee. On the trial, the plaintiff Stern was examined as a witness and testified that plaintiffs rented to J. J. Morse & Co. a part of the store occupied by plaintiffs, hereinbefore described. They (J. J. M. & Co.) went into possession in February, 1869, and occupied up to January 1, 1870, at which time defendants went into possession. The lease from plaintiffs to J. J. Morse & Co. was then put in evidence by the plaintiff. It is dated the 15th of October, 1870, and is for a term commencing on the 15th of October, 1870, and ending May 1, 1872, at the annual rent of $900, from said fifteenth of October until May 1, 1871, and at the rate of $1,050 from last-mentioned date until the end of the term. By said lease, defendant had the privilege of using a part of the cellar under said store for the purpose of storing sewing machines, and for other purposes connected with the business.

The plaintiffs, in and by said lease, undertook and agreed to heat and warm said store, including the half thereof leased to defendant, in a comfortable manner, suitable to its business.

J. J. Morse & Co. were indebted to defendant for the price of sewing machines sold to them, and, being insolvent and unable to pay therefor, the defendant sent one Folts, as its agent, to Syracuse to obtain security for such indebtedness, and to that end, to purchase the machines that J. J. Morse & Co. had on hand, and take an assignment of their notes, etc., to be collected, and the proceeds applied on the debt due to defendant.

Folts went to Syracuse and purchased the machines of J. J. Morse & Co., and took an assignment of the rest of their property as security for their debt due to defendant.

Amongst other assets of J. J. Morse & Co. was the lease, from plaintiff to them, of the store in question, and they assigned it to defendant on the 1st of February, 1871. Folts applied to plaintiff Stern for his consent to such assignment, and he replied that he would consent, provided he got his pay promptly and they assumed the responsibilities of J. J. Morse & Co., which Folts agreed to do, and thereupon Stern signed a consent to the assignment of the lease. This evidence, as to the parol agreement between plaintiffs and Folts, the defendant's counsel moved to strike out as incompetent, and as merged in the writing. The motion was denied, and the defendant's counsel excepted.

The defendant remained in possession from the time of the foregoing arrangement until the 3d of October, 1871, paying rent. At the date last mentioned, the defendant caused to be served on plaintiffs a notice, in writing, that they quit and surrendered possession of said premises because said premises were untenable and unfit for occupancy, and not heated and warmed in a comfortable and suitable manner.

On the part of the defense, evidence was given tending to prove that the roof of that part of the building occupied by defendant leaked when it rained, and injured some of the sewing machines, rendering it necessary on several occasions to remove some of them to other parts of the store, and to cause them to be repaired and put in order so that they would

operate. Evidence was also given tending to prove that the store was not properly heated, and that water came into the cellar where the machines were stored. The plaintiffs did not claim that the roof did not leak, nor but that defendant's employes had to move, from time to time, machines, nor but they were to some extent injured by the water, nor that the store was not properly heated, but plaintiffs' evidence tended to prove that the roof did not leak as extensively as defendant's witnesses testified to; and that the water in the cellar was caused by a break in the water pipe in an adjoining store, and that there was, at all times, a sufficient supply of coal in the cellar with which defendant's men might have made and maintained a fire sufficient to heat said store.

Plaintiffs also gave evidence tending to prove that whenever they were notified that the roof leaked, they called on their landlord to repair it, and he did so on several occasions; at one time he put a new roof over the part occupied by defendant. On the 3d October, 1871, the defendants assigned the lease from plaintiffs to J. J. Morse & Co., and by them assigned to defendant, to one Andrew Ames, by the advice of counsel, in order to release themselves from further liability to pay rent, disclaiming, in said assignment, any and all interest in said demised premises.

The part of the store occupied by defendant remained unoccupied from the 3d October, 1871, when it left said store, until the 1st of March, 1872, when it was leased to another tenant. The referee finds most of the facts above set forth, and, also, that the leaking of the roof, although it incommoded the defendant, was not sufficient legal excuse for abandoning the premises; and that the neglect to keep the store comfortably warm did not justify defendant in abandoning the premises, or relieve him from liability to pay the rent. His conclusions of law were, that the parol agreement, made at the time plaintiffs consented to the assignment of the lease, established a parol letting for the residue of the term specified in the written lease, and at the rent therein reserved;

and that, although void by the statute of frauds, yet defend-
ant having entered and occupied, rendered such letting valid
for one year, and operated as a surrender, by operation of
law, of the original lease, and defendant is liable for the rent
for the whole term the plaintiffs were unable to relet.

The referee ordered judgment in favor of the plaintiffs for
the sum of $299.25. The defendant's counsel excepted to the
conclusions of law. Judgment was entered in conformity
with the report of the damages and costs of the action. From
that action the defendant appeals.

*William C. Ruger*, for respondent.

*Irving G. Vann*, for appellant.

MULLIN, *P. J.* — The assignee of a lease is not liable for
rent of the demised premises except for the time he occupies
them, and may at any time terminate his liability for rent by
assigning the lease (2 *Platt on Leases*, 416 ; *Taylor on Land-
lord and Tenant, sec.* 444 ; *Woodfall L. and T. [edition of
1871]*, 208, 369, 681).

The defendant assigned the lease in question to one Ames
on the 3d October, 1871, and abandoned possession. Under
the authorities referred to, the defendant was no longer liable
for the rent; but the referee decides, as matter of law, that
the defendant expressly agreed to assume the liabilities of
Morse & Co. under the lease, and the payment of the rent
was one of those obligations.

This conclusion of the referee is based upon the evidence
of the plaintiff, given on his own behalf on the trial, which
evidence is as follows, viz. :

" Folts " (a duly authorized agent of the defendant) " asked
me if I would be willing to assign the lease to defendant. I
replied that I would, provided I got my pay promptly, and
they assumed all the responsibilities of J. J. Morse & Co.,
and paid me my rent promptly, which Folts agreed to do,

and thereupon I executed the consent on the lease. Folts said the company was more responsible than J. J. Morse & Co., and would pay rent more punctually and become responsible for it."

It cannot be claimed, upon this evidence, that Folts was intending in this interview with the plaintiff to abandon the written lease, and to enter into a verbal one for any period of time. Folts desired plaintiffs' consent to the assignment of the written lease, and his consent was given. The old lease was not varied in the slightest particular. The plaintiffs' consent was given, upon the condition that defendant would pay the rent promptly and assume the obligations of J. J. Morse & Co., and Folts, representing the defendant, accepted the condition.

By taking an assignment of the lease, the defendant assumed the obligations imposed by the lease on J. J. Morse & Co., and one of these was the payment of the rent. No parol agreement was necessary to charge the defendant with these obligations, and the agreement to pay promptly did not hasten or retard the time of payment specified in the lease. The consent of plaintiff was not necessary to enable J. J. Morse & Co. to assign the lease to the defendant, there being no prohibition in the lease against assignment.

The agreement of the defendant to pay rent, if such an agreement was in fact made, was without consideration to support it. But it seems to me legally impossible to construe what passed between plaintiff and Folts into a new and distinct agreement to rent the premises, and to pay rent otherwise than is specified in the written lease.

The plaintiff having agreed to heat the premises rented to the defendant, and having violated that agreement, the defendant was entitled to recover by way of counter-claim such damages as it showed itself entitled to. But the defendant failed to furnish to the referee any data to enable him to ascertain the amount of damages to which it claimed to be entitled.

These remarks apply to the other claims, on the part of the

Stern *et al.* agt. Florence Sewing Machine Company.

defendant; but, in the view we take of this case, it is unnecessary to allude to them.

The building was not in such a dilapidated condition, or so out of repair, as to justify the defendant in abandoning the premises.

The judgment is reversed and a new trial granted before another referee, costs to abide event.

TALCOTT and SMITH, JJ., concurred.